THOMAS FEAREY AND OTHERS *vs.* CALVIN A. HOTCHKISS.

The statute (Gen. Statutes, tit. 19, ch. 17, part 17, sec. 8,) provides that if any debtor shall refuse to disclose his rights of action with intent to prevent the same from being taken by foreign attachment, any creditor aggrieved may institute an action on the case against him and have process of attachment and execution against his body. A creditor procured a writ of attachment against a debtor, with a factorizing clause in which a blank was left for the names of the garnishees, and put it into the hands of an officer to serve. The officer made known to the debtor the contents of the writ and demanded property on which to levy. The debtor replied that he had none. He then asked him if he had not debts due him for goods sold. He replied that he had bills enough due him to pay his debts if he could collect them. The officer then demanded the names of the debtors that he might factorize them, but the debtor refused to give them. Held that he had made himself liable to the creditor under the statute.

It is not necessary that the refusal be made to the creditor himself or to an

agent previously authorized for the express purpose. Where the refusal is made to an officer, not as a stranger or intermeddler, but as representing the creditor and acting in his behalf, the authority implied in his having the writ to serve, with a subsequent adoption of his act by the creditor, is sufficient.

It was found that " there were rights of action then held by the defendant, sufficient, if collected, to discharge the debt due the plaintiff." Held that, in the absence of evidence to the contrary, it would be presumed that the debts were of some value, and that the plaintiff was injured by the refusal of the defendant to disclose the names of the debtors.

TRESPASS on the case for fraud in refusing to disclose rights of action with intent to prevent their being taken by foreign attachment; brought by appeal from the judgment of a justice of the peace to the Court of Common Pleas of New Haven County, and tried to the court on the general issue before *Harrison, J.*

On the trial the plaintiffs offered evidence to prove that on the 27th day of April, 1877, the defendant was indebted to them in the sum of $69, and that on that day they procured a writ of attachment in the ordinary form, with a factorizing clause annexed in which a blank was left for the names of the garnishees, and placed it in the hands of David Tucker, a deputy of the sheriff of the county, with directions to serve the same according to its precepts and commands; and that the deputy sheriff on the same day, with the writ in his hands, without any further instructions, asked the defendant to turn out property that might be attached on the writ, and the defendant replied that he had none. The officer then asked him if he had not debts due him for goods that he had sold; to which he replied that he had bills enough due him to pay his debts, if he could collect them. The officer then made demand that he should expose these debts, and give the names of his debtors, that they might be garnisheed. This the defendant refused to do.

The defendant objected generally to all the evidence to prove a demand upon the defendant, in the manner in which it was made, for him to disclose his rights of action to the officer and his refusal to do so; 1st, because it did not appear that the officer was a creditor of the defendant; 2d, because it did not appear in evidence that he was authorized in any

other manner than by what appeared on the face of the writ to demand such disclosure from him; 3d, because he did not at the time of making the demand disclose to the defendant any authority from any creditor of his to make such demand otherwise than what appeared on the face of writ; 4th, because there was no command in the writ directing or authorizing him to make such demand; 5th, because it was all irrelevant. But the court overruled all of the objections and admitted the evidence.

The court found the facts above stated, and also found that at the time of the demand there were rights of action then held by the defendant, or belonging to him, sufficient, if collected, to discharge the debt due the plaintiffs.

Upon these facts the defendant claimed, and asked the court to hold, that there had been no refusal to disclose his rights of action to the plaintiffs; that the deputy sheriff had no right or legal authority from the directions in the writ to demand the disclosure of his rights of action; and that the plaintiffs could not be aggrieved by his refusal, unless he refused to disclose to them or to their authorized agent, and to an agent known to him to be so authorized; nor unless his rights of action were shown to have been collectible and available for the purpose of paying the plaintiffs' claim at that time and that from them they could then and there have secured and collected their debt or some part of it by process of foreign attachment; and that upon the facts judgment should be rendered for the defendant.

But the court refused so to hold, and overruled all the defendant's claims, and rendered judgment for the plaintiffs to recover the sum of $74.85 and their costs.

The defendant moved for a new trial for error in the above rulings of the court.

*H. C. Baldwin* and *W. H. Williams*, in support of the motion.

The gist of this action is fraud—the fraudulent intent of the defendant to prevent his rights of action being taken by foreign attachment. *Armstrong* v. *Ayers*, 19 Conn., 540;

*Cowles* v. *Day*, 30 id., 410. In order to recover the plaintiffs must prove, and the court must find, all the essential facts alleged in the declaration, namely—1st. The indebtedness of the defendant to the plaintiffs. 2d. The demand upon him for the disclosure of his rights of action. 3d. His refusal to disclose them, *with intent to prevent them from being taken by foreign attachment.* 4th. That at the time of the demand the defendant had rights of action of substantial value. 5th. The damage by means of such refusal, to the plaintiffs. The finding of facts in this case does not cover the material allegations in the declaration. The court does not find the fact proved that any demand was ever made by the plaintiffs or their authorized representative upon the defendant for the disclosure of his rights of action; nor that the defendant had any rights of action at the time of the demand made which were of any value at that time; nor that the plaintiffs were damaged by his refusal to disclose his rights of action. The demand made by the officer was not an official act, but it was the act of an individual who had no authority or direction from the plaintiffs in that behalf; not the act of any creditor, or the agent or attorney of any creditor. The defendant had the right to know that the person calling upon him for the disclosure was a creditor of his or some person having the right to represent such creditor in the premises. A mere stranger can have no right to call upon · any man to make such disclosure. The evidence to show a refusal by the defendant to disclose his rights of action to the officer was, therefore, clearly inadmissible. The act of the officer in making the demand, if not previously authorized, could not be subsequently ratified. To put the defendant in the wrong, his refusal must have been made to a person then authorized to make the demand. Story on Agency, §§ 246, 7, 8; 2 Bouvier Inst., 25, 26.

*V. Munger*, contra.

Loomis, J. The statute upon which this action is founded makes a debtor liable to an aggrieved creditor if " he refuses to disclose his rights of action with intent to prevent the

same from being taken by foreign attachment." General Statutes, Revision of 1875, p. 490, sec. 8.

It appears therefore that the essential elements necessary to sustain the action are three; viz.: namely, an act; an accompanying intent; and a resulting injury to the plaintiff.

The act referred to is a refusal by the defendant to disclose his rights of action, and the intent must be to prevent the same from being taken by foreign attachment. Now if the evidence offered by the plaintiffs and objected to by the defendant tended, in any degree, to prove either of the above mentioned facts, the court did right in receiving it.

By reference to the motion for a new trial it will appear that the defendant was indebted to the plaintiffs in the sum of sixty-nine dollars, and that to secure the same the plaintiffs sued out a writ of attachment in the ordinary form for attaching the property of the defendant, and with a factorizing process annexed thereto, complete in every respect, except that a blank was left for the insertion of the names of the garnishees with whom the officer was directed to leave copies and to summon them before the court to make disclosure. This writ was put into the hands of a deputy sheriff with no further instructions than to serve it " according to its precepts and commands." With this writ the officer called on the defendant and asked him to turn out property that might be attached, and he replied that he had none. The sheriff then asked him if he had not debts due him for goods that he had sold ; the defendant replied that he had bills enough due him to pay his debts, if he could collect them. The sheriff then made demand that he expose these debts, and give the names of his debtors, that they might be garnisheed. This the defendant refused to do.

The defendant objected generally to all evidence to prove a demand upon the defendant in the manner in which it was made, for him to disclose his rights of action to the deputy sheriff, and his refusal so to do, giving five reasons for such objection:—1st, because it did not appear that the officer was a creditor of the defendant; 2d, because it did not appear that he was authorized in any other manner than by what

appeared on the face of the writ to demand such disclosure from him; 3d, because he did not at the time of making the demand, disclose to the defendant any authority from any creditor of his to make such demand otherwise than what appeared on the face of the writ; 4th, because there was no precept in the writ directing or authorizing him to make such demand; and 5th, because the evidence was irrelevant.

It will appear from the above objections that the defendant concedes that he was informed of all that appeared on the face of the writ. The gist of the objection is that the sheriff made no other disclosure as to his authority, and in fact had no other authority, than what appeared or might be implied from the writ.

Notwithstanding a certain plausibility in some of the objections, we think a careful consideration of the facts and circumstances, with the natural presumptions to be derived therefrom, will show that the evidence objected to was admissible. It did certainly show an unqualified refusal on the part of the defendant to disclose his rights of action; and it as surely tended to show that the intent of such refusal was to prevent the plaintiffs from taking such rights of action by foreign attachment; for, when the sheriff demanded the names of his debtors, (which he admitted that he had,) the purpose of the inquiry was also expressly stated, " that the same might be garnisheed." Now when the defendant in view of this statement, and in view of what appeared on the face of the writ, refused to give any of these names, it did certainly tend to prove that he intended to prevent what the sheriff proposed. It is quite true that the evidence in itself would not be conclusive, but the presumption would be that the refusal was for the only purpose that had been mentioned. Such presumption might have been rebutted if he had at the time given any other reason, such for instance as counsel now suggest, that the refusal was owing to the unauthorized and impertinent inquiry by the sheriff.

It may be suggested that in the above reasoning due weight is not given to the defendant's legal proposition, that, to make him liable, his refusal to disclose his rights of action

must have been made directly to the plaintiffs themselves, or to some agent previously authorized for the express purpose. We cannot accept this proposition as true in terms. The plaintiffs, under the statute, cannot properly be restricted to this precise mode of proof. If, however, all that the defendant really means is, that his act and intent relative to the disclosure must have had reference to the plaintiffs, and must have resulted in their injury, so much we concede; for if the defendant's refusal was merely to the sheriff as a stranger and intermeddler, without any design to affect the plaintiffs and their rights, it would not sustain the action. But upon the facts of this case we are unable to concede to the defendant an honest belief that his conduct had no reference to the plaintiffs, and that his refusal was intended merely to rebuke an impudent and impertinent intermeddler.

It is idle to assume that the defendant might have supposed that the sheriff was making such inquiries on his own account, and without reference to the particular claim and suit of the plaintiffs, which he was there on purpose to secure. The acts of the defendant must be considered with reference to the business the sheriff was then and there transacting with him. The sheriff calls on the defendant and makes known the fact that he has this writ in favor of the plaintiffs to secure by attachment an admitted debt due them from the defendant. The defendant hears the sheriff's demand for property to attach on that writ, and replies that he has none. He hears the inquiry whether he has not debts due him for goods sold, and replies that he has sufficient to pay his debts if collected. He next hears the demand to name these debtors that they might be garnisheed, and absolutely refuses.

We cannot regard the inquiry of the sheriff last mentioned as a mere impertinence. It was natural and reasonable for him to consider that the factorizing process was annexed to the writ for some purpose and that such purpose must have been to secure, if necessary, the plaintiffs' demand; that the blank for the names of the defendant's debtors was left because

the names were unknown at the time, to be filled as the exigencies of the case might require; and such occasion did surely arise when the sheriff found no tangible goods or estate, and found that the defendant's property could be reached through the factorizing process and only in that way.

But if we are to regard the previous authority of the sheriff inadequate of itself to call for a disclosure from the defendant, we think the authority implied from the writ, in connection with the subsequent adoption of the act by the plaintiffs, sufficient to cure the defect. It is a general rule that a subsequent ratification of an unauthorized act is just as binding as a previous authority. It is always so as against the principal, and usually so against third persons.

Suppose in this case that the defendant had complied with the officer's request and had given the names of his debtors, and that the sheriff had thereupon procured the insertion of those names in the blank, and had then made due service on these garnishees, and suppose that the plaintiffs had subsequently brought scire facias against them, could they defend on the ground that the sheriff had not been previously authorized to ascertain their names or procure them to be inserted in the writ? Why should the defendant's compliance with an unauthorized request have made subsequent proceedings against other parties valid, when his refusal could have had no effect on himself? The answer which most readily suggests itself is, that the defendant is to be subjected as by a proceeding sounding in tort. We admit that the principles as to the effect of subsequent ratification may require some modification, so as to do no injustice to the defendant. If, for instance, the adoption of the sheriff's act would put the defendant in a false position, as where he might have refused to make disclosure simply and honestly because the sheriff had no authority, a subsequent ratification of the sheriff's act ought not to affect him, but in such case there would be wanting one indispensable element of the plaintiffs' action—the intent.

If on the other hand the defendant by such refusal intended to prevent the plaintiffs from availing themselves of that

mode of securing their claim, as we think the evidence tended to prove, then the plaintiffs, by a ratification of the sheriff's act, simply placed the defendant just where he meant at the time to be, so that he cannot complain that any wrong is done to him.

We conclude therefore that the evidence objected to was admissible; and this virtually disposes of all the questions raised in any part of the defendant's motion except one, namely, whether the plaintiffs could be .aggrieved by the defendant's refusal to disclose his rights of action unless these rights of action were shown to have been collectible and available for the purpose of paying the plaintiffs' claim at that time, and from which they could then and there have secured and collected their debt, or some part of it, by process of foreign attachment.

The finding by the court upon which the above claim is based is—" that at the time of such demand there were rights of action then held by the defendant or belonging to him, sufficient, if collected, to discharge the .debt due the plaintiffs." We think this finding is sufficient. In the absence of all opposing testimony it is to be presumed that the debts due the defendant were of some value,.and that the plaintiffs were aggrieved by being prevented from attaching them.

A new trial is not advised.

In this opinion the other Judges concurred; except CARPENTER, J., who dissented.